## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| RICHARD CASTRO, ROLANDO GUZMAN, IRMA LEIBAS, and ANTHONY LOTT, | |
| Plaintiffs, | Case No. 19-cv-00471 |
| v. | Judge Martha M. Pacold |
| THOMAS DART, TONI PRECKWINKLE, and COOK COUNTY | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Richard Castro, Rolando Guzman, Irma Leibas, and Anthony Lott brought this action against Defendants Cook County, Cook County Sheriff Thomas Dart, and President of the Cook County Board of Commissioners Toni Preckwinkle under 42 U.S.C. § 1983 and the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq.* Plaintiffs allege that Defendants have enforced a sick leave policy that infringes their constitutional rights and interferes with their FMLA rights. Plaintiffs do not object to the dismissal of Defendant Preckwinkle, [29] at 13; thus, Defendant Preckwinkle is dismissed. Defendants Cook County and Dart move to dismiss under Rule 12(b)(3) for improper venue and Rule 12(b)(6) for failure to state a claim. The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). For the following reasons, the motion to dismiss [26] is granted as to the FMLA claim but is otherwise denied.

### Background

In evaluating Defendants' motion to dismiss under Rules 12(b)(3) and 12(b)(6), the court accepts as true the following factual allegations from the complaint. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013); *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011).

Plaintiffs are Deputy Sheriffs for Cook County who hold the rank of Correctional Officer. First Am. Compl., [16] at 2 ¶¶ 3–6.[1] In January 2018, Cook County entered into a Collective Bargaining Agreement (the "CBA") with the International Brotherhood of Teamsters, Local Union No. 700 (the "Union"). [16] at 4 ¶ 4. The Union represented a bargaining unit consisting of all employees in certain job classifications, including that of Correctional Officer, within certain departments and operational units and subject to certain exceptions. [16] ¶ 12. Plaintiffs allege they are members of this bargaining unit. [16] ¶ 13. The complaint alleges that "Cook County and the Office of Sheriff are plaintiffs' employers." [16] at 3 ¶ 9. The CBA states that Cook County and the Sheriff of Cook County are joint employers. [26-1] at 8.[2]

Separate sections of the CBA address sick leave, [26-1] at 25–26 § 8.2, and FMLA leave, [26-1] at 32 § 9.4. Within the sick leave section is a "home check" provision: employees who call in sick are required to remain home during a missed shift and must report movement to a "medical call in line." [16] at 5 ¶ 17 (quoting CBA § 8.2.H).[3] From the briefing, the parties appear to agree that the fact that the provision applies to employees who "call in" sick means that the provision governs unexpected sick leave, not preapproved sick leave. Plaintiffs allege that pursuant to the provision, Correctional Officers who call in sick may only leave their home for

---

[1] Bracketed numbers refer to docket entries and are followed by the page and paragraph number, as appropriate. Page number citations refer to the ECF page number.

[2] Plaintiffs attached the CBA to their original complaint, [1-1], and Defendants reattached it to their motion to dismiss, [26-1]. Defendant Preckwinkle and representatives of the Union signed the CBA, but the Sheriff did not, even though there was a signature line for the Sheriff's signature. [26-1] at 85.

[3] The home check provision, CBA § 8.2.H, reads in full:

An Officer/Investigator who calls in sick must remain in his or her home for the duration of his or her missed shift. Any time he or she has to leave his or her home (e.g., doctor's appointment, pick up medicine, etc.) he or she must report the movement to the medical call in line. The Officer/Investigator must indicate the location of where he or she is going and the expected duration of the time away from home, this includes care in another person's home. The medical call in line may call his or her home or cell phone at any time throughout the missed shift to verify that he or she is at home. The Sheriff reserves the right to send personnel to the Officer's/Investigator's home to verify his or her location. The first violation of this language shall result in a three (3) day suspension, the second violation shall result in a fifteen (15) day suspension, the third violation shall result in a twenty-nine (29) days suspension and the fourth (4) violation shall result in a Merit Board complaint register being filed for discipline, to include termination. If the Officer goes six (6) months without an infraction, he shall go down one step in the progressive discipline process.

[16] at 5 ¶ 17 (quoting CBA § 8.2.H).

medical matters related to the leave. [16] ¶ 18. Employees who call in sick may receive calls and in-person home checks from the Sheriff's "Home Check Unit" to ensure compliance. [16] ¶¶ 19–20. Employees who violate this policy may be disciplined, up to and including termination for repeat violations. [16] at 7 ¶ 21.

In addition to the CBA, in response to the motion to dismiss, Plaintiffs attached what they describe as "the Sheriff's Department's Procedure 123, 'Medical Call-In Procedure,' from the Cook County Department of Corrections Procedure Manual." [29] at 7 & Ex. A.[4] Plaintiffs point to the Medical Call-In Procedure from the Manual in support of their allegation that the Sheriff enforces the home check provision of the CBA.[5]

---

[4] While Plaintiffs did not attach this document to their complaint, plaintiffs may "submit materials outside the pleadings to illustrate the facts the party expects to be able to prove" in opposition to a Rule 12(b)(6) motion. *Larkin v. Bd. of Educ. of City of Chicago*, No. 17-cv-09298, 2020 WL 1904087, at *1–2 (N.D. Ill. Apr. 17, 2020) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). Defendants do not contest the document's authenticity.

[5] The Medical Call-In Procedure provides, among other things:

123.4   HOME CHECK VISITS

A Home check visits [*sic*] may be conducted on a Sheriff's Office member when he/she calls in a medical/sick and/or FMLA benefit day . . . and does not report for work, however, is compensated for the day (e.g., medical/sick time used, FMLA time used).

. . .

123.4.2   MEMBER RESPONSIBILITIES

A member who is subject to a home check visit in accordance with an applicable collective bargaining agreement should remain at his/her residence for the duration of the missed tour of duty. The only exception to remaining at his or her residence is if the member needs to leave the house for a reason related to the use of sick time (e.g., to attend a medical appointment, to pick up a prescription). In the event Sheriff's Office personnel arrives to conduct a home check visit, the affected member shall make contact with Sheriff's Office representative at the member's residence for verification. Upon request, the affected member shall provide the Sheriff's Office personnel with valid photo identification (e.g., Sheriff's Office Identification Card, driver's license, state identification card).

. . .

If the affected member is unable to remain at his/her residence (e.g., doctor's visit, to pick up medicine) during the duration of his/her tour of duty, the member shall:

3

Plaintiffs concede that "the CBA itself does not impose its home check policy on employees on FMLA leave." [29] at 2 n.2 (citing [16] ¶17; [26-1] at 25). However, the "Home Check Visits" provision of the Medical Call-In Procedure applies when an employee "calls in a medical/sick and/or FMLA benefit day . . . and does not report for work," but "is compensated for the day (e.g., medical/sick time used, FMLA time used)." [29-1] at 4. Additionally, plaintiffs Leibas, Guzman, and Lott allege that they were subject to home confinement and home checks while on FMLA leave. [16] at 7–8 ¶¶ 23, 25, 26.

According to the complaint, each Plaintiff took sick leave and / or FMLA leave in 2018 after Cook County and the Union adopted the CBA. Each of them was confined to their home during the leave, and each received visits from the home check unit. [16] at 7–8 ¶¶ 23–26.[6]

-----

(a)    Prior to leaving his/her residence, notify the Sheriff's Office at (773) 674-4787 or log into the Sheriff's Office Home Check Application . . . and provide the following information:

    1.    Full name (first/last names must be clearly spelled);

    2.    JDE Number;

    3.    Location of where he/she is going; and

    4.    Expected duration of the time away from his/her residence.

(b)    After returning to his/her residence, notify the Sheriff's Office (either via phone or email).

(c)    Prior to the end of the member's next tour of duty, send an email to the Attendance Review Unit . . . if a Home Check Notification Card was left. The email should include details regarding why the member was unable to be at his/her residence at the time of the home check (specific diagnosis or other information regarding a medical condition should not be included).

(d)    If further follow-up and/or documentation is required by the Attendance Review Unit, the member shall comply with the requirements set forth by the Attendance Review Unit.

[29-1] at 4–5.

[6] Plaintiffs have not expressly alleged that the Medical Call-In Procedure was in effect when they took leave. But Plaintiffs allege that they took leave at various times between May and November 2018. [16] at 7–8 ¶¶ 23–26. The Medical Call-In Procedure says that it "was *re-issued* on April 1, 2019 and shall become effective on April 14, 2019 . . . ." [29-1] at 2 (Section 123.1.1) (emphasis added). At the pleading stage, this sufficiently implies that some version was in effect when Plaintiffs took leave. Further details are matters for discovery.

Plaintiffs brought this action in 2019 and subsequently filed the operative First Amended Complaint. [16]. Plaintiffs allege that the home check provision of the CBA and Defendants' enforcement of the provision violate the First, Fourth, Ninth, and Fourteenth Amendments, warranting declaratory and injunctive relief under 42 U.S.C. § 1983 (Count 1), violate the Equal Protection Clause, again warranting relief under § 1983 (Count 2), and interfere with Plaintiffs' rights under the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1) (Count 3). Defendants now move to dismiss. [26].[7]

## Discussion

### I. Standing

Defendants argue that Plaintiffs lack Article III standing to bring their constitutional claims.[8] "In ruling on a motion to dismiss for want of standing, the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). Since Defendants are challenging Plaintiffs' standing on the face of the complaint, Plaintiffs are not required to present evidence to demonstrate standing. *Id.*

The Constitution authorizes federal courts to adjudicate disputes in which the alleged injury is "concrete and particularized" and "actual or imminent," not "conjectural" or "hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs allege that Defendants' policy:

> confines plaintiffs to their residences while legitimately on sick or FMLA leave and thereby infringes and imposes a chilling effect upon plaintiffs' fundamental rights to vote, to freely exercise their religion by attendance at their chosen house of worship, to go to court, to attend political or family gatherings and to travel while on sick or FMLA leave.

[16] at 8 ¶ 29.

Defendants argue that any constitutional harm is speculative, since Plaintiffs have not actually attempted to engage in the protected activities they cite. Since Plaintiffs have not attempted to violate the policy, Defendants have not prevented them from engaging in these activities or disciplined them for doing so. Defendants

---

[7] After the motion was fully briefed, the parties filed additional briefs on discrete issues at the court's request. *See* [35], [39], and [41].

[8] Defendants brought their motion under Rule 12(b)(6). In their reply brief, Defendants clarified for the first time that they were challenging Plaintiffs' constitutional standing. [33] at 4–6. Defendants' standing argument should have been raised under Rule 12(b)(1), since it is a challenge to the court's subject matter jurisdiction.

also argue that a mere threat of sanctions only amounts to a constitutional injury when the freedom of speech is implicated.

*Pienta v. Vill. of Schaumburg, Ill.*, 710 F.2d 1258 (7th Cir. 1983), is directly on point. There, the Seventh Circuit considered regulations that confined employees of the Schaumburg Police Department on injury or sick leave to their homes, only allowed them to leave for medical reasons, and subjected them to calls and home visits. *Id.* at 1259–60. The plaintiffs challenged the regulations under the First, Fourth, Fifth, Ninth and Fourteenth Amendments. *Id.* at 1259. The Seventh Circuit held that by confining plaintiffs to their homes, the regulations infringed the plaintiffs' "rights to vote, to exercise freely their religion by church attendance, to go to court, to attend political or family gatherings, and to travel," and that the plaintiffs had standing to challenge the regulations "without attempting to disobey." *Id.* at 1260. Plaintiffs allege here the same injuries found sufficient in *Pienta*.

Defendants also try to distinguish *Pienta* since unlike there, here Plaintiffs could first pursue a grievance under the CBA. But as discussed below, the CBA does not require Plaintiffs to pursue constitutional and statutory claims through the grievance process.

Finally, Defendants analogize to cases concerning individual employees' standing to bring claims for breaches of collective bargaining agreements. This analogy fails since Plaintiffs are alleging violations of constitutional and statutory rights, not violations of the CBA. Plaintiffs have standing to bring this challenge.

## II. The CBA's Grievance Procedures

The court next addresses whether Plaintiffs' claims are subject to the grievance procedures in the CBA. Defendants argue that this dispute boils down to a disagreement about the Plaintiffs' rights under the terms of the CBA. Since the CBA provides a mandatory grievance process for contractual disputes, Defendants seek dismissal under Rule 12(b)(3) for improper venue. The court assumes without deciding that Rule 12(b)(3) is an appropriate procedural vehicle for this request. *See Grasty v. Colorado Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015) ("[A]n agreement to arbitrate does not affect a district court's subject-matter jurisdiction. An arbitration clause is a type of forum-selection clause. Motions to compel arbitration thus concern venue and are brought properly under Federal Rule of Civil Procedure 12(b)(3), not Rule 12(b)(1).") (citations omitted); *Johnson v. Orkin, LLC*, 556 F. App'x 543, 544 (7th Cir. 2014) (same); *Faulkenberg*, 637 F.3d 801, 808 (7th Cir. 2011) (same).

In evaluating a Rule 12(b)(3) motion, the court "takes all the allegations in the complaint as true unless contradicted by the defendant's affidavit and may examine facts outside the complaint." *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d

1091, 1094 (N.D. Ill. 2015). The court also construes "all facts" and draws "reasonable inferences" in favor of the plaintiff. *Faulkenberg*, 637 F.3d at 806.

Defendants argue that the CBA requires Plaintiffs to "utilize the grievance procedures if they believe that the Employer has violated the contract." [16] at 10. First, plaintiffs' claims rest not only on the CBA, but also on the Medical Call-In Procedure from the Cook County Department of Corrections Procedure Manual. Defendants have not argued that claims concerning the Medical Call-In Procedure are subject to the CBA's grievance procedures. Second, even setting aside the Medical Call-In Procedure, Plaintiffs do not allege that Defendants violated the CBA, nor do Plaintiffs seek an adjudication of their contractual rights. *See* [41] at 2 ("There is no issue here as to the interpretation or application of Section 8.2.H. . . . No one suggests that defendants would breach the CBA by enforcing its home check provision."). Instead, they allege infringements of their rights under the Constitution (for which they seek relief under Section 1983) and FMLA.

An agreement to arbitrate statutory claims is enforceable "so long as the collective bargaining agreement explicitly states that an employee must resolve his statutory as well as his contractual rights through the grievance procedure delineated in the collective bargaining agreement"; "[t]he language of the agreement in this regard must be clear and unmistakable." *Vega v. New Forest Home Cemetery, LLC*, 856 F.3d 1130, 1134 (7th Cir. 2017) (discussing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), and other cases). Where "nothing in the language of the collective bargaining agreement clearly and unmistakably requires an employee to resolve a statutory claim through the grievance procedure," an employee is free to bring statutory claims in federal court without filing a grievance first. *Vega*, 856 F.3d at 1135 (distinguishing *14 Penn Plaza* and explaining that there, the contractual language "explicitly incorporated a variety of statutory anti-discrimination provisions into the agreement and provided that '[a]ll such claims shall be subject to grievance and arbitration procedure . . . as the sole and exclusive remedy for violations'") (quoting *14 Penn Plaza*, 556 U.S. at 252).

Defendants do not point to any clear and unmistakable CBA language subjecting statutory claims to the CBA's grievance procedures. The CBA's grievance procedures apply to "difference[s] between an employee or the Union and the employer with respect to the interpretation or application of, or compliance with the terms" of the CBA. [26-1] at 37 § 11.2 ("Definition" section defining "grievance"). This provision does not suggest that employees must arbitrate statutory claims, let alone clearly and unmistakably. *See Vega*, 856 F.3d at 1135; *Cloutier v. Trans States Holdings, Inc.*, No. 16-cv-01146, 2016 WL 3181708, at *2–3 (N.D. Ill. June 8, 2016); *Reiff v. Calumet City*, No. 10-cv-05486, 2011 WL 494204, at *3 (N.D. Ill. Feb. 3, 2011) (no clear and unmistakable agreement in the CBA at issue to arbitrate Section 1983 due process claim). The CBA recognizes that "[e]mployees shall be entitled to family medical leave in accordance with the Family Medical Leave Act" and makes other references to FMLA leave in the same section

7

[26-1] at 32 (CBA § 9.4), but those references do not clearly and unmistakably direct to the CBA's grievance mechanism FMLA claims involving the home check policy.

Further, the CBA does not permit arbitrators to "amend, modify, nullify, ignore or add to the provisions of" the CBA. [26-1] at 39. The arbitrator's decision must instead be based solely on the arbitrator's "interpretation of the meaning or application of the express relevant language of the agreement." [26-1] at 39. Since the arbitrator derives power from the CBA, the arbitrator "'has no general authority to invoke public laws that conflict with the bargain between the parties.'" *Ameren Illinois Co. v. Int'l Bhd. of Elec. Workers*, 906 F.3d 612, 617 (7th Cir. 2018) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 53 (1974)). This issue has not been fully explored by the parties, but since Plaintiffs' claims rely on public laws that allegedly conflict with the bargain expressed in the CBA, it is not at all clear that an arbitrator would have authority to grant Plaintiffs the relief they seek.

Since Plaintiffs' claims do not fall within the scope of the CBA's grievance mechanism, they are properly before the court.

## III. Failure to State a Claim

Next, Defendants argue Plaintiffs have failed to state claims for relief and seek dismissal under Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual information to state a claim for relief that is plausible on its face and raises a "right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the Rule 12(b)(6) stage, the court assumes the truth of the complaint's well-pleaded factual allegations but not its legal conclusions, and draws all inferences in plaintiffs' favor. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016).

### A. Section 1983 and First, Fourth, Ninth, and Fourteenth Amendments (Count 1)

In Count 1, Plaintiffs bring a claim under 42 U.S.C. § 1983, alleging violations of the First, Fourth, Ninth, and Fourteenth Amendments. To state a Section 1983 claim, Plaintiffs must allege that Defendants harmed them by infringing specific constitutional rights. *See Welton v. Anderson*, 770 F.3d 670, 673 (7th Cir. 2014). "Section 1983 is a tort statute," which means Plaintiffs must allege that they have suffered "cognizable legal harm." *Doe v. Welborn*, 110 F.3d 520, 523 (7th Cir. 1997).

Defendants again argue (as they do with respect to standing) that Plaintiffs have only alleged speculative harm. Once again, *Pienta* directly controls. For the

same reasons discussed above with respect to standing, the claim alleges cognizable legal harm. *Pienta*, 710 F.2d at 1260.

Defendants also contend that only unexpected (not preapproved) leave is at issue and presumably Plaintiffs would not have planned to engage in constitutionally protected activities during scheduled work hours before they fell unexpectedly ill. Defendants further attempt to distinguish *Pienta* by pointing out that the policy in this case only applies during scheduled work hours, whereas the policy in *Pienta* applied around the clock for the duration of an employee's leave period (including evenings and weekends). And defendants point to reasons why the policy was put in place.

Discovery may support or undercut the parties' arguments. But at this stage, when the analysis is limited to the pleadings and factual details are not available, the arguments do not sufficiently distinguish *Pienta*. *Pienta* concluded that the regulations at issue there did not survive strict scrutiny given the "blanket prohibition on plaintiffs' freedom of movement." *Id.* at 1260–61. The Seventh Circuit further noted that "even under the rational basis test these regulations are of questionable validity." *Id.* at 1261; *see also Spring-Weber v. City of Chicago*, No. 16-cv-08097, 2017 WL 1316267, at *5 (N.D. Ill. Apr. 10, 2017) (citing *Pienta* and holding that the plaintiff "adequately alleged that the defendants' home confinement policy violate[d] her constitutional rights" since it did not permit her to attend political or family gatherings or travel outside Chicago unless it was for an emergency and the employee received prior approval from the medical section command staff). *Pienta* recognized that "[o]f course, a municipal police department has a legitimate interest in handling sick and injury relief policies to assure the ability to carry out its public services. Some restrictions on the activities of an employee on leave are justifiable, and the Department should be entitled to verify whether an employee's absence from home is consistent with a claim of disability." 710 F.2d at 1261 (citing *Gissi v. Codd*, 391 F. Supp. 1333, 1336 (E.D.N.Y. 1974)). But again, at this stage, limiting the analysis to the pleadings and drawing reasonable inferences in Plaintiffs' favor, the claim alleges enough to warrant discovery and survive the motion to dismiss.

## B. *Monell* Liability

In order to bring constitutional claims against a municipality under Section 1983, Plaintiffs must satisfy the requirements of *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). They must show "(1) that [they] suffered a deprivation of a constitutionally protected interest, and (2) that the deprivation was caused by an official policy, custom or usage of the municipality." *Gibson v. City of Chicago*, No. 13-cv-03273, 2013 WL 6698164, at *3 (N.D. Ill. Dec. 17, 2013) (citing *Monell*, 436 U.S. at 694–95). To state a *Monell* claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference" that the municipality maintained a policy or custom that caused the alleged constitutional

deprivation.  *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

As discussed above, Plaintiffs have plausibly alleged a deprivation of a constitutionally protected interest.  To satisfy *Monell*, Plaintiffs must also allege facts that plausibly suggest the deprivation was caused by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with final policymaking authority.  *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007).  Defendants argue that Plaintiffs' alleged injuries are not the result of one of these three categories of municipal action.

Defendants first assert that the policy is not an express municipal policy; instead, it is a bargained-for provision in a collective bargaining agreement. Defendants argue that *Pienta* involved municipal regulations that the municipality presumably had the authority to issue unilaterally; here, in contrast, the CBA expresses the bargain that the Union negotiated on behalf of Plaintiffs and other employees (over Plaintiffs' opposition), the CBA required Union approval, and the CBA now requires Defendants' compliance.  Indeed, Plaintiffs allege that "[b]ecause of the Home Check Provision," they "each opposed and voted against ratification of the CBA."  [16] at 7 ¶ 22.  Defendants contend that if Plaintiffs disagree with the provision, then Plaintiffs should take that issue up with the Union and seek that the Union renegotiate the provision or name the Union as a defendant (which Plaintiffs have not done).  Defendants also observe that Dart did not actually sign the CBA.  Plaintiffs respond that by agreeing to the CBA, Cook County adopted the CBA as municipal policy, and that Dart enforces a policy consistent with the provision.

If Plaintiffs relied solely on the CBA, then Defendants' arguments might raise a more substantial question.  *See Uryevick v. Rozzi*, 751 F. Supp. 1064, 1070–71 & n.6 (E.D.N.Y. 1990) (addressing constitutionality of regulations, but declining to address constitutionality of CBA, since plaintiffs' claim was not against the union).  But Plaintiffs do not rely solely on the CBA.  Rather, as described above, Plaintiffs submitted the Medical Call-In Procedure from the Cook County Department of Corrections Procedure Manual, which explicitly states that an employee "who is subject to a home check visit in accordance with an applicable collective bargaining agreement should remain at his/her residence for the duration of the missed tour of duty.  The only exception to remaining at his or her residence is if the member needs to leave the house for a reason related to the use of sick time (e.g., to attend a medical appointment, to pick up a prescription)."  [29-1] at 5 § 123.4.2.

Moreover, Defendants have not cited any authority indicating that a CBA cannot itself be the source of an express municipal policy, or at least support the plausibility of an allegation of a widespread custom or practice.  Plaintiffs cite a case in support of their argument.  *See Cohen v. Bd. of Trustees of Univ. of D.C.*,

10

311 F. Supp. 3d 242, 258 (D.D.C. 2018) (a collective bargaining agreement's "very purpose is to create municipal policy: it 'set[s] forth terms and conditions of employment' for public employees"). The court's non-exhaustive research has revealed nothing to the contrary. *See Messman v. Helmke*, 133 F.3d 1042, 1045 n.2 (7th Cir. 1998) ("As to the CBA provision, the City is clearly subject to § 1983 liability . . . for the municipal policy embodied in the CBA."); *Ming v. City of Rochelle, Ill.*, 91-cv-20229, 1992 WL 123160, at *3 (N.D. Ill. May 15, 1992) (the municipal defendant "set the official policy regarding due process rights of employees in the collective bargaining agreement and employee handbook"); *Kasper v. City of Middletown*, 352 F. Supp. 2d 216, 235 (D. Conn. 2005) ("The collective bargaining agreement . . . may qualify as a municipal 'policy' under *Monell*, since Middletown signed and adopted the provisions of the agreement."). Considering both the Manual and the CBA, the *Monell* claim survives the motion to dismiss.

### C. Section 1983 and Equal Protection (Count 2)

Defendants next urge the court to dismiss Plaintiffs' Equal Protection claim (Count 2). The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." Here, Plaintiffs allege Defendants "have entered into collective bargaining agreements with several other similarly-situated bargaining units within the Sheriff's Department." [16] at 10 ¶ 34. Plaintiffs allege those bargaining units' CBAs are similar to theirs "in scope and terms," but do not contain a home check provision. [16] at 10 ¶ 35. They allege this discrepancy violates the Equal Protection Clause.

Defendants first argue Plaintiffs are not members of a protected class. But "a person doesn't have to be a member of a protected group to invoke the clause." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000). "Another typical equal protection challenge is based on denial of a fundamental right." *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009) (citing *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006)). "With both suspect classes and denials of fundamental rights, the government's justification for the regulation must satisfy the strict scrutiny test to pass muster under the Equal Protection Clause." *Srail*, 588 F.3d at 943. As discussed above, Plaintiffs have plausibly alleged that Defendants have infringed Plaintiffs' fundamental rights. *See Pienta*, 710 F.2d at 1259 (affirming district court's holding that the regulations in question infringed plaintiffs' "fundamental rights").

Next, Defendants correctly note that the Supreme Court has held that public employees may not bring "class-of-one" claims. *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 605 (2008). However, Plaintiffs do not allege a "class-of-one" equal protection violation; they allege differential treatment with respect to fundamental rights. *See Thayer v. Chiczewski*, 705 F.3d 237, 254 n.5 (7th Cir. 2012) ("A true

class-of-one case claim, on the other hand, does not implicate fundamental rights."). "[T]he Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently." *Engquist*, 553 U.S. at 605. Allegedly, Defendants' policy infringes the fundamental rights of individuals in the Plaintiffs' bargaining unit—a distinct group of individuals—but not of employees in other similarly situated bargaining units. The motion is denied as to Count 2.[9]

### D. FMLA (Count 3)

Next, the court addresses whether Plaintiffs have adequately alleged that the home check policy interferes with their FMLA rights. The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). To prove that Defendants interfered with their right to take FMLA leave, Plaintiffs would ultimately need to show that (1) they were eligible for FMLA protection, (2) Defendants were covered by the FMLA, (3) Plaintiffs were entitled to leave under the FMLA, (4) Plaintiffs provided sufficient notice of their intent to take FMLA leave, and (5) the Sheriff's Department denied them FMLA benefits to which they were entitled. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015).

Defendants argue that Plaintiffs fail to allege any instance where they were not allowed to take requested FMLA leave. However, Plaintiffs argue that the home check policy discourages them from taking FMLA leave, and this can be enough to support a claim. *See* 29 C.F.R. § 825.220(b) ("Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.").

Nonetheless, Plaintiffs fail to state a plausible claim for relief under the FMLA. Neither party has identified anything in the FMLA or the implementing regulations that addresses the permissibility of a policy like the one alleged here. With regard to notice for requesting leave, the FMLA and regulations leave room for the employer to adopt usual and customary requirements, so long as they do not conflict with the FMLA or the regulations. 29 C.F.R. § 825.303(c) ("When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances."); *Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969, 972 (7th Cir.

---

[9] Defendants also argue for the first time in their reply brief that Plaintiffs have failed to allege that the other bargaining groups are "prima facie identical in all relevant respects." *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002). However, "arguments raised for the first time in a reply brief are waived." *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 636 (7th Cir. 2018). The court accordingly declines to address this argument.

2000) ("[n]othing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring employees on FMLA leave to keep the employer informed about the employee's plans" for returning to work).

Plaintiffs point out that *Gilliam* involved only a notification requirement, not a requirement to remain at home. That is true, but the distinction does not resolve the question whether the policy at issue comports with the FMLA. Plaintiffs have not argued or cited authority that the FMLA generally preempts policies designed to prevent fraud and abuse. *Cf. Kariotis v. Navistar International Transportation Corp.*, 131 F.3d 672, 681 (7th Cir. 1997). The parties have not cited a Seventh Circuit case directly addressing whether a policy like the one at issue here is consistent with the FMLA, but other courts have held that similar policies did not interfere with substantive FMLA rights. *Callison v. City of Philadelphia*, 430 F.3d 117 (3d Cir. 2005), upheld a similar policy that required employees to call and report their location and remain at home except for reasons related to the sick leave. *Id.* at 118. The court concluded that this policy "neither prevents employees from taking FMLA leave nor discourages employees from taking such leave." *Id.* at 120. *Callison* also rejected arguments (which Plaintiffs do not make here) that the FMLA's eligibility requirements (29 U.S.C. § 2612(a)(1)) and anti-abuse provisions (§ 2613) preempted the policy. 430 F.3d at 120–21 ("There is no right in the FMLA to be left alone."); *see also Allen v. Butler Cty. Comm'rs*, 331 F. App'x 389, 396 (6th Cir. 2009). This case is no different.

Even if Defendants' policy discouraged leave, Plaintiffs' allegations do not suggest they were "prejudiced by the violation." *Franzen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008). To prevail, a plaintiff would ultimately need to show that the plaintiff "would have structured his leave differently" absent the violation. *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 368 (7th Cir. 2020). Plaintiffs' allegations here only involve restrictions on leave they *did* take. Their allegations do not support a "reasonable inference" that they would have acted differently, sought additional leave, or structured their leave differently were it not for the discouraging effect of the home check policy. *Iqbal*, 556 U.S. at 678; *see also Lutes*, 950 F.3d at 368–69.

Finally, Plaintiffs cite a Department of Labor report concluding that the home check policy violated the FMLA. *See* [29-2]. However, that report found that Defendants initiated disciplinary proceedings against employees who did not answer the door during home checks. [29-2] at 3. Since some of these employees had medical conditions that affected their ability to answer the door, those employees were punished for taking legitimate FMLA leave. This finding has no application here. While discipline may constitute interference under the FMLA, none of the Plaintiffs has alleged that they were disciplined, let alone as a result of their medical conditions or for taking legitimate FMLA leave rather than for noncompliance with the policy.

Drawing all reasonable inferences in favor of Plaintiffs, the claim for FMLA interference does not plausibly allege interference with any substantive FMLA right. Plaintiffs' FMLA interference claim (Count 3) is dismissed without prejudice.

### E. Redundant Party

Defendants seek to dismiss defendant Dart, who is named in his official capacity as Sheriff of Cook County, as redundant with Cook County. Claims against municipal officials in their official capacities are really claims against the municipality and are "redundant when the municipality is also named as a defendant." *Union Pac. R.R. Co. v. Vill. of South Barrington*, 958 F. Supp. 1285, 1291 (N.D. Ill. 1997).

The court declines to dismiss Dart. Dart is "an independently-elected constitutional officer who answers only to the electorate, not to the Cook County Board of Commissioners." *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989) (citing Ill. Const. Art. VII, § 4(c)). The CBA identifies Cook County and the Sheriff as joint employers. [26-1] at 8. Plaintiffs allege that in Dart's official capacity as Sheriff, and as a joint employer under the CBA, Dart has implemented and enforced a policy that deprives them of their constitutional rights. Factual questions about the joint employment cannot be resolved at the pleading stage. Defendants have not shown that Dart is a redundant party on the face of the pleadings.

### Conclusion

Defendants' motion to dismiss [26] is granted in part and denied in part. Count 3 is dismissed without prejudice. The court denies the motion in all other respects. If Plaintiffs wish to file an amended complaint consistent with this opinion, they must do so by October 16, 2020.

Date: September 1, 2020                     /s/ Martha M. Pacold